UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| REYMUNDO ALANIZ-FLORES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:25-CV-177-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court upon the motion of the United States to dismiss the complaint filed by Plaintiff Reymundo Alaniz-Flores pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) ("FTCA"). *See* [R. 12, pp. 1, 3]. The parties have filed their respective responses, [R. 16], and replies, [R. 17], rendering this matter ripe for decision.

**I.**

In his complaint, Alaniz-Flores complains of three different matters. First, Alaniz-Flores alleges that in June 2022, Health Services Assistant Administrator J. Cimarosa denied his request for a bottom bunk pass, despite his long suffering from a ruptured hernia. [R. 1, p. 3]. At the time, he was sixty-five years old and suffered from osteoporosis in both knees. *Id*. Cimarosa denied the request, stating that Alaniz-Flores did not meet the criteria set forth in the governing policy established by the Bureau of Prisons ("BOP"). *Id*. Alaniz-Flores does not allege that he suffered any injury as a consequence of the denial of a bottom bunk pass.

Second, Alaniz-Flores states that in August 2022, Dr. Joseph Eid told him that he needed surgery to repair a ruptured hernia. [R. 1, p. 2]. According to the plaintiff, Dr. Eid told him that the surgery would be performed robotically, necessitating only four one-half-inch incisions. However,

the surgery performed in February 2023 was an exploratory surgery that required a nearly six-inch incision near his groin. *See id*. Alaniz-Flores alleges that a day after the surgery, one of his testicles and his penis became swollen to almost four and a half inches in size. [R. 1, p. 2]. Alaniz-Flores states that one month after the procedure, the "[s]urgery began to open up" and "2/3 of [his] bladder" protruded from his body. *Id.* at 4. Alaniz-Flores alleges that seven months after the procedure, he learned from an outside physician that Dr. Eid was not a specialist trained to perform the surgery he underwent. *Id*.

Third, Alaniz-Flores alleges that in June 2024, Physician's Assistant ("PA-C") M. Dyer "aggressive[ly]" and "maliciously" pushed hard with both hands on his stomach near where the surgery was performed, and the "assaults" caused pain and perhaps aggravated his condition. [R. 1, pp. 3–4]. He states that in December 2024, a corrective surgery was performed, during which nine to twelve inches of his intestines had to be removed as a result of the damage caused by either the prior surgery or Dyer's actions, or both. *See id.* at 4.

On October 7, 2024, the BOP received a Standard Form 95 from Alaniz-Flores requesting administrative settlement of his claims under the FTCA. *See* [R. 12-1, pp. 34–41]. The BOP denied the request on April 2, 2025. *Id.* at 52. Alaniz-Flores sought reconsideration three weeks later, but the BOP denied that request on May 20, 2025. *Id.* at 54–58, 61.

Alaniz-Flores sues the United States of America under the FTCA for the actions of the three individuals identified. *See id.* at 4–6, 11.

**II.**

The United States seeks dismissal of Alaniz-Flores's various claims on jurisdictional grounds. *See* [R. 12, pp. 2–5]. Generally, sovereign immunity precludes suit against the United States. *Mynatt v. United States*, 45 F.4th 889, 894 (6th Cir. 2022) (citing *FDIC v. Meyer*, 510 U.S.

471, 475 (1994)). However, the FTCA waives that immunity for certain claims, U.S.C. § 1346(b)(1), subject to delineated exceptions, 28 U.S.C. § 2680. *Allen v. United States*, 83 F.4th 564, 567 (6th Cir. 2023). The United States argues that Alaniz-Flores's claims fall outside permitted confines.

With respect to his allegations against Dyer, and as to the cognizability of his bottom bunk claim, the United States presses only a facial attack. [R. 12, pp. 4–5]. Such an attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint and requires the court to treat the allegations of the complaint as true." *L. C. v. United States*, 83 F.4th 534, 542 (6th Cir. 2023) (quoting *Wright & Miller's Federal Practice & Procedure* § 1350 (3d ed. 2023)). In contrast, the government presents a factual attack against the timeliness of Alaniz-Flores's bottom bunk claim and his claims of medical negligence regarding the care provided by Dr. Eid. [R. 12, p. 4]. In such an attack, the challenger presents materials outside the pleadings to be considered when deciding as a factual matter whether subject matter jurisdiction is present. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

In his response, Alaniz-Flores argues that the medical care he received violated his constitutional rights. *See* [R. 16, p. 1]. However, the Court dismissed all of his claims under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against the individual defendants upon initial screening. *See* [R. 7, pp. 2–3]. Alaniz-Flores does not respond in any way to the arguments asserted by the government in its motion. *See* [R. 16]. Having failed to do so, he has forfeited any opposition to the dismissal sought by the United States. *See KSA Enters., Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 463 (6th Cir. 2019) ("A party's failure to respond to an argument raised in a motion to dismiss results in the forfeiture of that argument."); *Heyward*

*v. Cooper*, 88 F.4th 648, 654 (6th Cir. 2023). Nonetheless, the Court will address the substance of each of the government's contentions.

**A.**

The Court proceeds chronologically, beginning with Alaniz-Flores's complaint that in June 2022 he was denied a bottom bunk pass. [R. 1, p. 3]. The United States challenges this claim on three grounds by contending: (1) the complaint is barred by the discretionary function exception; (2) the complaint is barred by the statute of limitations; and (3) Alaniz-Flores did not allege that he suffered any injury from the denial. *See* [R. 12, pp. 5–13]. The government is correct on all three counts.

First, the FTCA expressly excludes from its scope:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This "discretionary function" exception is designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). The Court decides whether the exception applies by first asking "whether the action is a matter of choice for the acting employee[,]" and if it is, whether that judgment is "based on considerations of public policy." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988).

By its terms, the applicable BOP policy vests the prison employee with discretion when determining whether a lower bunk assignment is warranted. It states that "the following list [of circumstances] should not be interpreted to mean automatic qualification" and that "[n]o

permanent lower bunk assignment will be issued," thereby allowing the "Medical Team [to] review for clinical necessity."[1] Given the clear element of discretion in making cell and bunk assignments and the policy-based underpinnings guiding those determinations, the Court breaks no new ground in holding that complaints regarding lower bunk assignments are precluded by the discretionary function exception. *Cf. Miller v. United States*, No. 24-55-DLB, 2026 WL 622776, at *6 (E.D. Ky. Mar. 5, 2026) (holding that "[i]nmate bunk assignments involve an element of choice" and fall within the discretionary function exception); *Harper v. United States*, No. 5:08-CV-403-KKC, 2009 WL 3190377, at *4 (E.D. Ky. Sept. 30, 2009) (finding "cell assignments are made in the reasoned discretion" of officials); *Paseur v. United States*, No. 1:20-cv-01189-AMM-SGC, 2021 WL 4434971, at *5 (N.D. Ala. Aug. 10, 2021) (holding that "bunk assignment decisions 'involve the type of across-the-board policy-making judgment that the discretionary function exception was meant to leave to . . . prisoner administrators'") (quoting *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004)).

Second, the FTCA provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). Alaniz-Flores's request for a bottom bunk pass was denied on June 15, 2022, [R. 1, p. 3], and his claim accrued at that time. The BOP did not receive his request for administrative settlement until October 7, 2024. [R. 12-1, p. 3]. A claim is deemed "presented" to a federal agency when the proper claim form or other written notification is *received* by the agency. *Amburgey v. United States*, 733 F.3d 633, 636 (6th Cir. 2013) (citing 28 C.F.R.

---

[1] *See Bedding and Lower Bunk Standards*, Fed. Bureau Prisons, 11 (Feb. 27, 2017), https://www.bop.gov/foia/foia_available_records.jsp?advancedSearch=true&toDate=12-31-2019 (search "bedding and lower bunk standards") (last visited on September 2, 2026).

§ 14.2(a)). Because Alaniz-Flores presented his claim to the BOP four months after the two-year limitations period expired, this aspect of his claim is time-barred.

Third, the United States is correct that Alaniz-Flores's complaint "completely fails to identify how the denial of a bottom bunk pass caused him any harm." [R. 12, p. 12]. While he complains that he should have been given such a pass, he does not allege that he suffered any resulting injury at all, let alone one cognizable under the FTCA. *Id*. The failure to allege "injury or loss of property, or personal injury or death" is an omission of jurisdictional significance that warrants dismissal. *Brownback v. King*, 592 U.S. 209, 217–18 (2021).

**B.**

The United States next seeks dismissal of Alaniz-Flores's claims related to the medical care provided by Dr. Eid on the ground that he is not employed by the BOP but is instead a subcontractor. [R. 20, pp. 13–14]. The FTCA provides the exclusive remedy for "the negligent or wrongful act or omission *of any employee of the Government* while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1) (emphasis added). However, the FTCA expressly excludes "any contractor with the United States" from the definition of "[f]ederal agency." 28 U.S.C. § 2671, ¶ 1. Accordingly, the FTCA does not waive the United States' sovereign immunity for claims predicated upon the alleged negligence or wrongful conduct of an independent contractor. *See United States v. Orleans*, 425 U.S. 807, 813–14 (1976); *Berrien v. United States*, 711 F.3d 654, 658 (6th Cir. 2013) (explaining that "the contractor exception precludes FTCA liability for any negligence" by contractors with the United States).

In this case, Health Services Administrator Kristy Donley has filed a declaration indicating that the BOP had a contract with healthcare administrator Seven Corners, Inc. to administer certain healthcare services to federal prisoners at USP McCreary. *See* [R. 12-2, pp. 2, ¶ 3]. In turn, Seven

Corners, Inc. had a contract with Lake Cumberland Regional Hospital, the facility where Alaniz-Flores received the care at issue, which in turn had a contract with Dr. Eid. to perform certain surgical procedures at its facilities. *See id.* ¶ 3. Donley makes clear that under the contract:

> USP McCreary does not have the authority to directly control the conduct, management, or actions of Seven Corners' staff members or medical personnel (i.e. USP McCreary could not have directed the work on Dr. Eid). Under the contract, USP McCreary could not dictate the manner by which Seven Corners provided care to inmate Alaniz-Flores, as long as Seven Corners complied with the quality assurance plan. USP McCreary staff do not dictate the medical care decisions of Seven Corners Staff. USP McCreary did not have the authority to directly control the medical services provided by Seven Corners under the comprehensive medical services contract. Further, the terms of the contract specifically state that USP McCreary and Seven Corners were contracting for professional services, Seven Corners would be operating as an independent contractor under the contract, and USP McCreary would have no control or the medical services rendered under the contract.

[R. 12-2, p. 3 ¶ 4]. Where, as here, the government does not control the contractor's specific actions in carrying out its obligations under the contract, courts have generally found that "private physicians working under contractual relationships with government owned facilities . . . are independent contractors, not government employees." *Davis v. United States*, No. 08-184-ART, 2009 WL 1360658, at *5 (E.D. Ky. May 13, 2009) (collecting cases); *see also Davis v. United States*, No. 22-136-DLB, 2023 WL 3854066, at *4 (E.D. Ky. June 6, 2023) (reiterating that control is the critical element in determining whether medical professionals are independent contractors or government employees). Because Dr. Eid was not an employee of the Government within the meaning of 28 U.S.C. § 1346(b)(1), Alaniz-Flores's claims predicated upon his medical care do not fall within the scope of the FTCA and must be dismissed.

**C.**

Finally, the United States seeks dismissal of Alaniz-Flores's claim that PA-C Dyer "'maliciously' put[] forty-five to sixty pounds of pressure on his abdomen for no apparent reason,"

[R. 12, p. 14], on the ground that the act alleged clearly falls outside the scope of his employment.

The FTCA only permits suit against the United States for the actions of government employees taken "within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Determining "whether the federal employee was acting within the scope of his or her employment [] is governed by the agency law of the forum state." *Does 1–10 v. Haaland*, 973 F.3d 591, 599 (6th Cir. 2020) (quoting *Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008)). In Kentucky, "the focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment." *Papa John's Int'l., Inc. v. McCoy*, 244 S.W.3d 44, 51 (Ky. 2008); *Laible v. Lanter*, 91 F.4th 438, 445 (6th Cir. 2024). Thus, "if the servant acts from purely personal motives which are in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." *Papa John's*, 244 S.W.3d at 52 (citation modified).

Here, Alaniz-Flores describes Dyer's alleged conduct as aggressive and malicious, characterizing the hard push into his abdomen with both hands as "assault." [R. 1, pp. 3–4]. Conversely, he does not state or suggest that Dyer's actions were in any way related to providing medical care. *Id*. Under analogous circumstances, courts have consistently found that the actions of government employees in Kentucky taken for purely personal or vindictive reasons do not fall within the scope of employment. *Cf. Greene v. United States*, No. 6:22-120-WOB, 2023 WL 309320, at *3 (E.D. Ky. Jan. 18, 2023) (finding alleged sexual assault committed by officer was not committed within scope of employment); *Robinson v. United States*, No. 6:21-CV-204-REW, 2024 WL 1219716, at *10 (E.D. Ky. Mar. 21, 2024) (finding alleged "'sadistic'" physical assault done by officer to retaliate against inmate was not committed within scope of employment); *Bannister v. Pearce*, No. 22-C91-DLB-EBA, 2025 WL 394949, at *5 (E.D. Ky. Feb. 4, 2025)

(finding an inmate's allegation that guards strip searched him, denied him access to bathroom, pepper-sprayed him, and beat him without reason described conduct wholly outside guard's scope of employment); *Matthews v. USP McCreary*, No. 6:24-CV-62-REW, 2026 WL 319191, at *10 (E.D. Ky. Feb. 4, 2026) (noting that allegations of purely "senseless, gratuitous violence" fall outside the scope of a prison guard's employment). Accordingly, the Court concludes that Alaniz-Flores's allegations against Dyer do not describe conduct within the scope of his employment. They thus fall outside of the scope of the FTCA, warranting dismissal.

Accordingly, it is **ORDERED** as follows:

1. The Motion to Dismiss, [**R. 12**], is **GRANTED**.

2. The Complaint, [**R. 1**], is **DISMISSED**.

3. A separate judgment shall follow.

This the 16th day of September, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY